# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 21-385-1 |
| | ) |
| JOSHUA YARBOUGH | ) |

## MEMORANDUM OPINION

Presently before the Court is Defendant Joshua Yarbough's Motion to Suppress for Illegal Search of Residences (the "Residence Suppression Motion"),[1] (Docket No. 1683), which is opposed by the Government. (Docket No. 1717 at 41-44). For the following reasons, Defendant's Residence Suppression Motion will be denied.

**I.   BACKGROUND**

On June 18, 2021, United States Magistrate Judge Lisa Lenihan authorized warrants to search four residences associated with Defendant, including 231 Glen Caladh Street in Pittsburgh, Pennsylvania (the "Subject Residence"). Following a search of the Subject Residence, various items were seized, including suspected narcotics, a firearm, ammunition, scales, and packaging material.

On August 31, 2021, Defendant and 23 others were charged in Count One of the Indictment in this case with conspiracy to possess with intent to distribute and distribute 400 grams or more of fentanyl, 280 grams or more of crack cocaine, a quantity of cocaine, a quantity of heroin, and a quantity of fluorofentanyl, in violation of 21 U.S.C. § 846, for conduct occurring from in and

---

[1]   Defendant filed a number of other pretrial motions, some of which the Court already has ruled on, (*see* Docket Nos. 1771, 1772), and some of which will be the subject of a hearing scheduled to occur on March 13, 2025. (*See* Docket Nos. 1776, 1788).

around August 2019 and continuing until in and around August 2021. (Docket No. 3 at 1-2). Defendant also is charged with six counts of possession with intent to distribute and/or distribution of a quantity of fentanyl and/or a quantity of crack cocaine for conduct occurring on or about the following dates: April 26, 2021 (Count Two); April 30, 2021 (Count Three); May 25, 2021 (Count Four); May 30, 2021 (Count Five); and June 18, 2021 (Counts Eight and Nine), each in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (*Id.* at 3-6, 10-11). Additionally, Defendant is charged with using, carrying and discharging a firearm during and in relation to a drug trafficking crime, and possession of a firearm in furtherance thereof, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), for conduct occurring on or about June 13, 2021 (Count Six), as well as possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), for conduct occurring on or about June 18, 2021 (Count Seven). (*Id.* at 7-9).

Defendant argues in his Residence Suppression Motion that Magistrate Judge Lenihan erred in granting the search warrant for the Subject Residence because the warrant affidavit did not establish a nexus between his alleged criminal activity and the Subject Residence. (Docket No. 1683, ¶¶ 10, 15). To that end, Defendant maintains that the affidavit failed to establish that any drug activity occurred at the Subject Residence, telephone calls intercepted on a wiretap did not mention the Subject Residence, agents only observed Defendant stop there for a brief period of time, and there is no evidence that the Subject Residence was a stash house, despite agents' conclusory remarks to the contrary. (*Id.*, ¶¶ 11-14). Consequently, Defendant urges the Court to suppress all evidence seized from the search of the Subject Residence. (*Id.* at 3).

The Government responds that suppression is unwarranted because Defendant has not established that he has standing to contest the search of the Subject Residence. (Docket No. 1717 at 43). Regardless, the Government submits that the warrant affidavit clearly established that

Defendant was involved in drug trafficking connected to the Subject Residence which provided probable cause to search it. (*Id.* at 44). Even if probable cause was lacking, the Government contends that the good faith exception to the exclusionary rule would apply to law enforcement's search of the Subject Residence. (*Id.*).

In Reply, Defendant asserts that he has standing to challenge the search. (Docket No. 1731 at 6). According to Defendant, he has a legitimate expectation of privacy in the Subject Residence because he was an overnight guest there "approximately" five times in 2021, and he went there "frequently" for meals. (*Id.* at 7). Additionally, Defendant maintains that he has an expectation of privacy in the Subject Residence because the Government alleges that he stored narcotics there. (*Id.*).

II.     **DISCUSSION**

The affidavit in support of the search warrants, which was prepared by FBI Special Agent ("SA") Kevin A. Pacini, is attached as an exhibit to Defendant's Residence Suppression Motion (hereinafter, the "Affidavit"). (*See* Docket No. 1683-2). Initially, SA Pacini summarized his employment and experience with the FBI since 2018, which includes assignment to the Violent Crimes Task Force in Pittsburgh investigating federal drug and firearm violations, as well as assignment to the Greater Pittsburgh Safe Streets Task Force, which focuses on the investigation of violent crimes and related offenses. (*Id.*, ¶ 2). As a result of SA Pacini's involvement in many narcotics and gang-related investigations and his training and experience in those areas, he is familiar with the methods and language used to distribute narcotics, launder proceeds, and operate drug trafficking conspiracies. (*Id.*, ¶ 3). SA Pacini personally participated in the investigation outlined in the Affidavit, reviewed information obtained from law enforcement and commercial

databases, and discussed the case with, and reviewed the reports of, other law enforcement officers who were involved in the investigation or who had previously investigated the subjects and their associates. (*Id.*, ¶ 8).

As averred in the Affidavit, Defendant was a member of a neighborhood street gang known as the "Hazelwood Mob" and/or the "Down Low Gang" (the "Organization"), which had ties to the Hazelwood neighborhood of Pittsburgh and surrounding communities, and whose members and associates engaged in narcotics trafficking in furtherance of the Organization's illegal activities. (Docket No. 1683-2, ¶ 6). The Affidavit was submitted in support of search warrants for locations associated with Defendant. (*Id.*, ¶ 5). To that end, the Affidavit identified and described the search locations, including the Subject Residence, which was referenced as "Search Location 2," (*id.*, ¶ 10); detailed SA Pacini's knowledge of evidence commonly associated with drug trafficking offenses, (*id.*, ¶¶ 11- 20); described the background of the investigation, (*id.*, ¶¶ 21-23); and set forth the basis for probable cause to search the various locations, including the Subject Residence. (*Id.*, ¶¶ 24-90).

As stated, Defendant contends that the Affidavit did not establish probable cause for issuance of the search warrant for the Subject Residence because there was no nexus between Defendant's alleged criminal activity and the Subject Residence. (Docket No. 1683, ¶¶ 10-15). The Government counters that Defendant lacks standing to challenge the search of the Subject Residence; however, even if he has standing, the Affidavit established that he was involved in drug trafficking connected to the Subject Residence. (Docket No. 1717 at 43-44). Furthermore, even if probable cause was lacking, the Government advocates that the good faith exception would apply. (*Id.* at 44). After considering the parties' submissions and reviewing the Affidavit at issue, the Court finds that the Government is correct on each count, as explained below.

### A. **Defendant lacks standing to contest the search of the Subject Residence.**

The Fourth Amendment protects individuals from "unreasonable searches and seizures" of their "persons, houses, papers, and effects." U.S. Const. amend. IV. The Fourth Amendment right to be free from unreasonable searches and seizures "is triggered only if the state invades an area in which the person has a 'constitutionally protected reasonable expectation of privacy.' " *United States v. Donahue*, 764 F.3d 293, 298 (3d Cir. 2014) (quoting *New York v. Class*, 475 U.S. 106, 112 (1986) (citation omitted)). Therefore, a defendant moving to suppress evidence seized in a search "bears the burden of proving not only that the search . . . was illegal, but also that he had a legitimate expectation of privacy" in the subject of the search. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). The standing inquiry "turns on two specific questions: '(1) whether the individual demonstrated an actual or subjective expectation of privacy in the subject of the search or seizure; and (2) whether this expectation of privacy is objectively justifiable under the circumstances.' " *Donahue*, 764 F.3d at 298-99 (quoting *Free Speech Coal., Inc. v. Att'y Gen.*, 677 F.3d 519, 543 (3d Cir. 2012)).

As relevant to Defendant's claim that he has an expectation of privacy in the Subject Residence, overnight guests who are "legitimately" in a third-party's residence may have a reasonable expectation of privacy therein. *United States v. Perez*, 280 F.3d 318, 337 (3d Cir. 2002) (citing *Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990)). However, "[t]he law distinguishes between overnight guests (who reasonably expect a degree of privacy) and transient visitors (who do not)." *United States v. Coles*, 264 F. Supp. 3d 667, 678 (M.D. Pa. 2017) (citing *Minnesota v. Carter*, 525 U.S. 83, 90 (1998)). As the Third Circuit Court of Appeals has explained, "if the police illegally enter a house and search it, the owner or tenant of the house, or any long-term guests, may suppress evidence found during the search. Short-term guests, however, have no

expectation of privacy in the house and therefore cannot suppress the fruits of the illegal search." *United States v. Mosley*, 454 F.3d 249, 259 (3d Cir. 2006). In determining whether one is an overnight guest who has an expectation of privacy in a particular residence, courts have considered, *inter alia*, whether and how often the individual spent the night; whether he had a key to the residence; whether the premises were habitable; and whether he stored personal belongings or overnight necessities there. *Coles*, 264 F.Supp.3d at 678 (citations omitted); *see also United States v. Rose*, 613 F. App'x 125, 129-30 (3d Cir. 2015) (upholding district court's finding that the defendant, who was a social guest, lacked standing to challenge search of apartment where he had no possessory interest in it, did not store personal belongings there, had no key, did not have permission to be there without the renter's presence or consent, did not receive mail there, and was only an infrequent visitor to the apartment).

In light of the prevailing legal standard, Defendant's unsupported assertion that he was an overnight guest at the Subject Residence "approximately" five times in 2021 and he went there "frequently" for meals, (*see* Docket No. 1731 at 7), does not establish that he has a reasonable expectation of privacy in the Subject Residence. First, Defendant's claim that he went to the Subject Residence "frequently" for meals makes his status on that basis equivalent to that of a social guest who does not reasonably expect a degree of privacy. *See Rose*, 613 F. App'x at 129-30 (finding no expectation of privacy for a social guest at the apartment of a long-time acquaintance). Next, Defendant's claim that he was an overnight guest at the Subject Residence "approximately" five times in 2021 does not establish that he stayed there on a regular basis, nor does he contend that he had a key, that he had permission to be there without the owner's presence or consent, or that he stored personal belongings or overnight necessities there. *See Coles*, 264 F. Supp. 3d at 678-79 (finding no expectation of privacy where the defendant never stayed in

apartment intentionally but only when he would fall asleep because he did not want to travel back to Maryland, he brought overnight bag on some occasions but kept no clothing, toiletries, or other overnight necessities in apartment, and it was unclear whether he had friend's permission to stay in apartment). As such, Defendant has not established a reasonable expectation of privacy in the Subject Residence based on his assertion that he was an infrequent guest who stayed overnight there "approximately" five times in 2021.

As a last ditch effort to establish standing, Defendant maintains that he has an expectation of privacy in the Subject Residence because the Government alleges that he stored narcotics there. (Docket No. 1731 at 7). It is true that "a defendant need not affirmatively present evidence of his legitimate expectation of privacy; rather, he may simply point to specific evidence in the record which the government [has] presented and which establishe[s] his standing." *United States v. Ginyard*, Crim. No. 17-274, 2019 WL 257937, at *5 (W.D. Pa. Jan. 18, 2019) (internal quotation marks and citation omitted). However, Defendant's reliance on the Government's allegation that he stored narcotics at the Subject Residence does not demonstrate his standing here because "it is well established that a connection with a property solely for drug-related activities is insufficient to confer standing." *United States v. Boyer*, Crim. No. 18-249, 2019 WL 3717669, at *4 (E.D. Pa. Aug. 6, 2019) (citing *Perez*, 280 F.3d at 337) ("[P]ersons in another's apartment for a short time for the business of packaging cocaine had no legitimate expectation of privacy in that apartment."). Accordingly, Defendant has not established that he has a reasonable expectation of privacy in the Subject Residence sufficient to confer standing to challenge the search at issue.

### B. The Affidavit Established Probable Cause for Issuance of the Warrant.

Even assuming that Defendant has standing to contest the search of the Subject Residence such that he could claim Fourth Amendment protection in this case, his Residence Suppression

Motion still must be denied. Contrary to Defendant's position, Magistrate Judge Lenihan properly determined that the Affidavit established probable cause for issuance of the search warrant for the Subject Residence.

The legal standard applicable to review of a magistrate judge's determination of probable cause is summarized as follows:

> "A magistrate's 'determination of probable cause should be paid great deference by reviewing courts.' " *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (quoting *Spinelli v. United States*, 393 U.S. 410, 419 (1969)). A trial court exercises "only a deferential review of the initial probable cause determination made by the magistrate." *United States v. Conley*, 4 F.3d 1200, 1205 (3d Cir. 1993) (citing *Gates*, 462 U.S. at 236) (emphasis in original). "[T]he duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed." *Gates*, 462 U.S. at 238 (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). The deference given to a magistrate's issuance of a warrant "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions." *United States v. Miknevich*, 638 F.3d 178, 182 (3d Cir. 2011) (internal quotations omitted). Still, " 'the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' " *United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir. 1993) (internal quotations omitted).
>
> A magistrate's role in issuing a warrant is to "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238. A warrant is to be upheld on review "as long as there is a substantial basis for a fair probability that evidence will be found." *Conley*, 4 F.3d at 1205. **In conducting this assessment, a reviewing court is confined "to the facts that were before the magistrate judge, i.e., the affidavit, and [the court may] not consider information from other portions of the record."** *Jones*, 994 F.2d at 1055. Stated otherwise, the District Court is restricted to viewing only the information confined by the "four corners" of the affidavit before the magistrate. *United States v. Whitner*, 219 F.3d 289, 295-96 (3d Cir. 2000). "The supporting affidavit to a search warrant is to be read in its entirety and in a common sense, nontechnical manner." *Miknevich*, 638 F.3d at 182. This includes "all the circumstances set forth in the affidavit before [her], including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information." *Gates*, 462 U.S. at 238. Further, " 'probable cause is a fluid concept' that turns on 'the

> assessment of probabilities in particular factual contexts not readily, or even usefully, reduced to a neat set of legal rules.'" *Miknevich*, 638 F.3d at 182 (quoting *United States v. Shields*, 458 F.3d 269, 277 (3d Cir. 2006)). Proof beyond a reasonable doubt is not required. *Id*.

*United States v. Coca*, Crim. No. 14-262, 2016 WL 7013037, at *4 (W.D. Pa. Dec. 1, 2016) (emphasis added).

As an initial matter, no evidentiary hearing is required in this case. The case law makes clear that this Court's review is confined to the "four corners" of the Affidavit that was before Magistrate Judge Lenihan, and we are not to consider information from other portions of the record. *Jones*, 994 F.2d at 1055. Therefore, it would be improper to consider information elicited at a hearing that was not previously submitted to Magistrate Judge Lenihan in support of the Affidavit.

Turning to the Affidavit, SA Pacini detailed the background of the investigation involving Defendant. Beginning in April 2021, agents and task force officers with multiple law enforcement agencies initiated a Title III wiretap investigation in which wire and/or electronic communications to and from multiple target telephones, including Target Telephones #6 and #7 used by Defendant, were intercepted. (Docket No. 1683-2, ¶¶ 21-23). Through those interceptions, law enforcement confirmed that Defendant distributed heroin/fentanyl and crack cocaine. (*Id.*, ¶ 24).

SA Pacini averred that there was probable cause to believe that evidence of federal controlled substance and firearms offenses would be found in the residences associated with Defendant, including the Subject Residence. (Docket No. 1683-2, ¶¶ 7, 9). As SA Pacini explained, drug dealers commonly store evidence of their involvement in drug trafficking, which may include controlled substances, drug paraphernalia, records and receipts related to controlled substance distribution, currency, electronic devices, firearms, and ammunition, at their residences or at the residences of relatives or other trusted associates. (*Id.*, ¶¶ 9, 11, 12). Further, large-scale

drug traffickers "often have multiple locations (including residences and/or 'stash houses') from which they operate their illegal activities and in which they maintain evidence of said illegal activities." (*Id.*, ¶ 18).

As averred in the Affidavit, law enforcement believed that Defendant utilized several locations in furtherance of his drug trafficking, including the Subject Residence located in the Hazelwood neighborhood of Pittsburgh, which he used to store heroin/fentanyl and crack cocaine. (Docket No. 1683-2, ¶¶ 9, 10, 50-60). On multiple occasions, law enforcement observed Defendant make brief stops at the Subject Residence, where a female with the initials J.B. resided. (*Id.*, ¶ 50). As an example, on May 30, 2021, Defendant utilized Target Telephone #7 to discuss with one of his customers the sale of $140 worth of narcotics. (*Id.*, ¶¶ 51-54). Defendant stated that he did not have any drugs with him at the time and that he had to go to Hazelwood to pick them up. (*Id.*, ¶¶ 51-52). A short time later, physical surveillance units observed a vehicle known to be operated by Defendant parked near the Subject Residence. (*Id.*, ¶ 55). Moments after agents observed the vehicle, it pulled out from in front of the residence. (*Id.*). Based on SA Pacini's training and experience and his review of the Title III interceptions and the physical surveillance, he averred that Defendant travelled to the Subject Residence to retrieve narcotics for a drug transaction with his customer. (*Id.*).

SA Pacini described another incident on June 9, 2021, when physical surveillance units observed Defendant operating a vehicle associated with him, park in front of the Subject Residence, speak to some individuals outside before entering the Subject Residence, exit minutes later, enter the vehicle, and drive away. (Docket No. 1683-2, ¶¶ 56-58). Given SA Pacini's training and experience, the wiretap interceptions, and his observations of Defendant, he averred that the approximate five minutes that Defendant spent in the Subject Residence was consistent

with the timing of a drug dealer picking up narcotics from a stash house. (*Id.*, ¶ 58). Approximately thirty minutes later, Defendant utilized Target Telephone #6 to inform a customer that he had narcotics available for sale. (*Id.*, ¶¶ 59-60).

Based on SA Pacini's Affidavit, Magistrate Judge Lenihan issued the search warrant for the Subject Residence. Upon review, this Court finds that the information contained in the "four corners" of the Affidavit as detailed herein was sufficient for Magistrate Judge Lenihan to have determined that there was a fair probability that evidence of Defendant's drug trafficking would be found in the Subject Residence. To summarize, law enforcement confirmed through wiretap interceptions of Target Telephones #6 and #7 used by Defendant that he distributed heroin/fentanyl and crack cocaine. Law enforcement also confirmed through physical surveillance that Defendant made brief stops at the Subject Residence on multiple occasions. The Affidavit then described two instances when Defendant made such a brief stop shortly before or after communicating with another individual about the sale of narcotics over one of the Target Telephones. Contrary to Defendant's argument that there was no nexus between his alleged criminal activity and the Subject Residence, it was reasonable for Magistrate Judge Lenihan to conclude that drugs were stored in the Subject Residence under the totality of the circumstances as just described. *See, e.g., United States v. Burton*, 288 F.3d 91, 103 (3d Cir. 2002) ("[D]irect evidence linking the residence to criminal activity is not required to establish probable cause. . . . Instead, probable cause to search can be based on an accumulation of circumstantial evidence that together indicates a fair probability of the presence of contraband at the home of the arrested."); *Whitner*, 219 F.3d at 296 ("The issuing judge or magistrate may give considerable weight to the conclusions of experienced law enforcement officers regarding where evidence of a crime is likely to be found and is entitled to draw reasonable inferences about where evidence is likely to be kept, based on the nature of the

evidence and the type of offense.") (citation omitted). Consequently, the Court finds that Magistrate Judge Lenihan had a substantial basis for concluding that probable cause existed for issuance of the warrant to search the Subject Residence.

### C. **Even if Probable Cause Was Lacking, the Good Faith Exception Would Apply to the Warrant.**

Even if the Court were to conclude that the warrant was not supported by probable cause, the good faith exception to the exclusionary rule would apply here. The law applicable to the good faith exception is summarized as follows:

> The Supreme Court has held that evidence derived from a warrant not supported by probable cause is still admissible when obtained by officers acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate judge. *United States v. Leon*, 468 U.S. 897, 926 (1984). "[T]he purpose of the exclusionary rule - to deter police misconduct - would not be furthered by suppressing evidence obtained during a search 'when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope.' " *United States v. Tracey*, 597 F.3d 140, 150 (3d Cir. 2010) (quoting *Leon*, 468 U.S. at 919–20).
>
> The question is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization." *Leon*, 468 U.S. at 922. Indeed, "[t]he mere existence of a warrant typically suffices to prove that an officer conducted a search in good faith and justifies application of the good faith exception." *United States v. Hodge*, 246 F.3d 301, 307-308 (3d Cir. 2001) (citing *Leon*, 468 U.S. at 922). The United States Court of Appeals for the Third Circuit has recognized that the good faith exception does not apply in four limited circumstances:
>
>> 1) where the magistrate judge issued the warrant in reliance on a deliberately or recklessly false affidavit;
>>
>> 2) where the magistrate judge abandoned his or her judicial role and failed to perform his or her neutral and detached function;
>>
>> 3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or
>>
>> 4) where the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized.

> *Tracey*, 597 F.3d at 151 (citations omitted). These limited exceptions "involve conduct that is 'deliberate, reckless, or grossly negligent.'" *Id.* (quoting *Herring v. United States*, 555 U.S. 135 (2009)).

*United States v. Gardenhire*, Crim. No. 15-87, 2017 WL 1105733, at *15 (W.D. Pa. Mar. 24, 2017).

Here, Defendant does not address the good faith exception, let alone claim that any of the four limited circumstances apply. Any attempt to do so would be unavailing because there is nothing in the record to suggest that Magistrate Judge Lenihan issued the warrant in reliance on a deliberately or recklessly false affidavit, or that she abandoned her judicial role and failed to act in a neutral and detached manner. Similarly, any claim that the warrant was so facially deficient that it failed to particularize the place to be searched or the things to be seized is unsupported by the record. Finally, the warrant Affidavit is not so lacking in indicia of probable cause that it was entirely unreasonable for law enforcement to rely on it in conducting the search. As discussed, under the totality of the circumstances, the information contained in the Affidavit established probable cause for issuance of the warrant to search the Subject Residence. *See supra* at 9-11.

In sum, even if the warrant was deemed insufficient, the good faith exception would apply to law enforcement's search of the Subject Residence. *See United States v. Stearn*, 597 F.3d 540, 567-68 (3d Cir. 2010) (even if affidavit suggesting that the defendant was a drug dealer and connecting his drug activities to a particular house did not provide probable cause to search the house, the good faith exception applied to police officers' search of house pursuant to warrant based on the affidavit; officers executing the warrant were not unreasonable in relying on the magistrate's probable cause determination). The record in this case simply does not support a finding that one of the four limited circumstances which permit the avoidance of the good faith exception apply here. *See Tracey*, 597 F.3d at 151. Consequently, suppression is not warranted.

### III. CONCLUSION

For the reasons discussed herein, Defendant's Motion to Suppress for Illegal Search of Residences, (Docket No. 1683), is DENIED.

An appropriate Order follows.

<u>s/ W. Scott Hardy</u><br>
W. Scott Hardy<br>
United States District Judge

Date: March 6, 2025

cc/ecf: All counsel of record