**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 21-385-1 |
| | ) | |
| JOSHUA YARBOUGH | ) | |

**MEMORANDUM OPINION**

Presently before the Court is Defendant Joshua Yarbough's Motion to Suppress – Title III

Wiretaps and Motion for *Franks* Hearing (the "Wiretap Suppression Motion"), (Docket No. 1684),

which is opposed by the Government.  (Docket No. 1717 at 3-22).  For the following reasons,

Defendant's Wiretap Suppression Motion will be denied.

## I.    BACKGROUND

The charges in this case arose from a Title III wiretap investigation into the "Hazelwood

Mob" and/or the "Down Low Gang," which is a neighborhood street gang operating in the

Hazelwood section of Pittsburgh and surrounding communities.  (Docket No. 1717 at 3).  The

Hazelwood Mob allegedly distributed narcotics and its members engaged in violent conduct.  (*Id.*).

According to the Government, the FBI had been investigating the Hazelwood Mob since at least

2019, and this case was opened in October 2020.  (*Id.* at 4).  Before initiating the wiretap, the FBI

developed confidential sources, conducted controlled purchases, set up pole cameras, monitored

location information of subjects' telephones, and utilized other investigative techniques, but was

unable to fully disrupt the organization.  (*Id.*; *see also* Docket No. 1684-2, ¶¶ 150-207).  The

wiretap phase of the investigation began on April 20, 2021.  (Docket No. 1717 at 4).  Authorization

to intercept communications over certain Target Telephones was received via four applications

between April 2021 and July 2021.  (Docket No. 1717 at 4-5).  The applications are sealed and

docketed at Misc. Nos. 21-503 and 21-503(a)-(c).  (*Id.*).

As relevant here, on May 19, 2021, Judge Nicholas Ranjan signed an Order at Misc. No. 21-503(a) authorizing the interception of wire and electronic communications of six cellular telephones, including Target Telephone #6 and Target Telephone #7 both utilized by Defendant. (Docket No. 1717 at 4).  The Affidavit in support of that wiretap application is attached as an exhibit to Defendant's Wiretap Suppression Motion.  (Docket No. 1684-2).  FBI Special Agent ("SA") Kevin Pacini, who has been involved in many narcotics and gang-related investigations during his employment with the FBI since November 2018, completed the Affidavit in support of the Application at Misc. No. 21-503(a).  (*Id.*, ¶¶ 2, 3).  In approving the Application, Judge Ranjan found that there was probable cause to believe that the target subjects committed, were committing, or would continue to commit felony drug trafficking and firearm offenses; probable cause to believe that particular wire and electronic communications of those individuals concerning such offenses would be obtained through the interceptions of the Target Telephones; and, that it was "adequately established that normal investigative procedures have been tried and have failed, reasonably appear to be unlikely to succeed if tried, or are too dangerous to employ."  (*See* Misc. No. 21-503(a), Order of 5/19/21, ¶¶ 1-4).

Ultimately, on August 31, 2021, Defendant and 23 others were charged in Count One of the Indictment in this case with conspiracy to possess with intent to distribute and distribute 400 grams or more of fentanyl, 280 grams or more of crack cocaine, a quantity of cocaine, a quantity of heroin, and a quantity of fluorofentanyl, in violation of 21 U.S.C. § 846, for conduct occurring from in and around August 2019 and continuing until in and around August 2021.  (Docket No. 3 at 1-2).  Defendant also is charged with six counts of possession with intent to distribute and/or distribution of a quantity of fentanyl and/or a quantity of crack cocaine for conduct occurring on

or about the following dates: April 26, 2021 (Count Two); April 30, 2021 (Count Three); May 25, 2021 (Count Four); May 30, 2021 (Count Five); and June 18, 2021 (Counts Eight and Nine), each in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (*Id.* at 3-6, 10-11). Additionally, Defendant is charged with using, carrying and discharging a firearm during and in relation to a drug trafficking crime, and possession of a firearm in furtherance thereof, in violation of 18 U.S.C. § 924(c)(1)(A)(iii), for conduct occurring on or about June 13, 2021 (Count Six), as well as possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), for conduct occurring on or about June 18, 2021 (Count Seven). (*Id.* at 7-9).

## II.   **DISCUSSION**

Defendant now moves to suppress communications that were intercepted over Target Telephone #6 and Target Telephone #7 pursuant to the wiretap order at Misc. No. 21-503(a).[1] (*See generally* Docket No. 1684). According to Defendant, the communications should be suppressed for several reasons: the Government failed to demonstrate sufficient necessity for the wiretap because it already had enough evidence to indict him, and it otherwise failed to exhaust all traditional investigative techniques; and the Affidavit of probable cause was tainted because it included information from confidential sources that was unreliable and stale. (*Id.* at 23-26). In addition, Defendant requests a *Franks* hearing because he claims there is a contradiction in the Affidavit. (*Id.* at 25).

---

[1]   As stated, on May 19, 2021, Judge Ranjan signed an Order at Misc. No. 21-503(a) authorizing the interception of wire and electronic communications of six cellular telephones, including Target Telephone #6 and Target Telephone #7 both utilized by Defendant. On June 17, 2021, Judge William S. Stickman IV signed an order at Misc. No. 21-503(b) authorizing the interception of wire and electronic communications of six cellular telephones, including Target Telephone #6 and Target Telephone #7. (Docket No. 1717 at 4). Although Defendant's phones were intercepted under the wiretap Order at Misc. No. 21-503(b) beginning on June 17, 2021, he did not move to suppress that wiretap Order. (*Id.* at 5, n.1). Defendant was arrested on state charges and detained on June 18, 2021, and co-defendant Asia Andrews then used his phones to engage in drug trafficking after his arrest and detention. (*Id.*). Accordingly, the Government notes, and Defendant does not dispute, that he seeks to suppress intercepted communications on Target Telephone #6 and Target Telephone #7 from May 19, 2021 through June 16, 2021. (*Id.*).

The Government responds that the Affidavit demonstrated the wiretap's necessity because traditional investigative techniques had not been successful in fully achieving the objectives of the investigation or ascertaining the full scope of the conspiracy. (Docket No. 1717 at 14-18). Additionally, the Government submits that the wiretap Affidavit contained ample probable cause to intercept Defendant's phones. (*Id.* at 19-21). Finally, the Government maintains that Defendant is not entitled to a *Franks* hearing because there is no inconsistency in the Affidavit. (*Id.* at 21-22). Even if the statements identified by Defendant were contradictory, Defendant has not sustained his burden necessary to obtain a *Franks* hearing. (*Id.* at 22).

In Reply, Defendant asserts that the Government did not meet the legal requirements of Title III before intercepting his phone communications because it simply used boilerplate language that law enforcement could not find where he lived and could not track his vehicle. (Docket No. 1731 at 1). However, the Pittsburgh Police were able to track his vehicle to his residence, which shows that traditional investigative techniques were available, but the Government did not utilize them. (*Id.* at 1-2). In Defendant's estimation, the Government wiretapped his phones too early in the investigation in violation of his constitutional rights. (*Id.* at 2). Defendant also reiterates that he is entitled to a *Franks* hearing. (*Id.*).

After considering the parties' submissions and reviewing the Affidavit at issue, the Court finds that suppression of the communications that were intercepted over Target Telephone #6 and Target Telephone #7 is unwarranted, and Defendant is not entitled to a *Franks* hearing, as explained below.

### A. The Affidavit Demonstrated Sufficient Necessity for the Wiretap.

Defendant advocates that his intercepted communications on Target Telephone #6 and Target Telephone #7 should be suppressed because the Government already had gathered some

information to expose his alleged crimes through traditional investigative methods, and it did not otherwise exhaust all traditional investigative techniques before intercepting his communications. (Docket No. 1684 at 24-25).  In other words, Defendant contends that the Government failed to establish that electronic surveillance was necessary to the investigation into the criminal and conspiratorial activity alleged in the Indictment.  Contrary to Defendant's position, SA Pacini's Affidavit filed in support of the application to conduct electronic surveillance set forth more than sufficient facts to establish necessity for the wiretap generally and specifically as to Target Telephone #6 and Target Telephone #7.

An application for a wiretap order must contain "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(1)(c).  Before issuing an order authorizing a wiretap, a court must then determine, on the basis of the application, that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous."  18 U.S.C. § 2518(3)(c).  The statutory requirement of necessity does not mandate that the Government exhaust all other investigative procedures before resorting to electronic surveillance.  *United States v. Williams*, 124 F.3d 411, 418 (3d Cir. 1997).  Instead, it is sufficient if there is evidence that "normal investigative techniques . . . reasonably appear to be unlikely to succeed if tried."  *Id.* (quoting 18 U.S.C. § 2518(3)(c)).  To make such a showing, "[t]he government need only lay a 'factual predicate' sufficient to inform the [authorizing] judge why other methods of investigation are not sufficient."  *United States v. McGlory*, 968 F.2d 309, 345 (3d Cir. 1992) (citing *United States v. Armocida*, 515 F.2d 29, 38 (3d Cir. 1975)). In determining whether this requirement has been satisfied, a court "may properly take into account affirmations which are founded in part upon the experience of

specially trained agents." *Williams*, 124 F.3d at 418 (quoting *United States v. Ashley*, 876 F.2d 1069, 1072 (1st Cir.1989)). In this regard, "[t]he government's showing is to be 'tested in a practical and commonsense fashion.' " *McGlory*, 968 F.2d at 345 (quoting *United States v. Vento*, 533 F.2d 838, 849 (3d Cir. 1976)). When a wiretap order is later challenged, a deferential standard of review is applied in determining whether the issuing judge had a "substantial basis" for authorizing the wiretap. *See United States v. Gilliam*, No. 02:12-CR-93, 2015 WL 5178197, at *14 (W.D. Pa. Sept. 4, 2015) (citing *United States v. Conley,* 4 F.3d 1200, 1205 (3d Cir. 1993); *Illinois v. Gates,* 462 U.S. 213, 237 (1983)). Finally, where, as here, a motion challenges the four corners of an affidavit and application, an evidentiary hearing is not required. *See id.*

In light of these prevailing legal standards, the Court finds that SA Pacini's Affidavit submitted in support of the application relative to Target Telephone #6 and Target Telephone #7 demonstrates conclusively that Judge Ranjan had a "substantial basis" for authorizing the wiretap. *See Gilliam*, 2015 WL 5178197, at *14. Consequently, Defendant's various arguments challenging the wiretap order lack merit.

Defendant first asserts that his communications were unlawfully intercepted because information to expose his alleged crimes already had been gathered through traditional investigative methods, citing an undercover controlled purchase of four bricks of suspected heroin/fentanyl, thus the Government could have charged him at that point. (Docket No. 1684 at 24). This argument is not persuasive because the investigation's goals were much broader than just charging Defendant for drug trafficking. *See United States v. Bailey*, 840 F.3d 99, 114–15 (3d Cir. 2016) (permitting wiretap interception of suspect's telephone, despite previously having conducted controlled purchases, where "arresting [him] alone would have frustrated the goals of the broader investigation"); *Armocida*, 515 F.2d at 38 ("Although the government ha[d] actual

6

knowledge of a conspiracy and evidence sufficient to prosecute one of the conspirators, it [would have been] unrealistic to require the termination of an investigation before the entire scope of the narcotics distribution network [was] uncovered and the identity of its participants learned."). As detailed in the Affidavit, law enforcement was investigating an extensive drug trafficking organization involving over 50 target subjects who were members or associates of the Hazelwood Mob. (*See* Docket No. 1684-2, ¶ 7). The goals of the investigation were to determine the scope of the Hazelwood Mob and the identity of its members and associates; to determine the organization's manner of operations; and to dismantle the organization through successful arrests and prosecutions of the conspirators, their sources of supply, their distributors, and any others who assist the organization. (*Id.*, ¶¶ 9, 150). When an investigation involves a large conspiracy, the Court of Appeals has found that a wiretap is necessary to achieve the investigation's broader goals. *See Bailey*, 840 F.3d at 116 ("[I]n the proper circumstances, the instrumentalities of Title III may be employed to discover the full extent of crimes and conspiracies.") (citation omitted); *United States v. Ellis*, 693 F. App'x 137, 139 (3d Cir. 2017) ("[W]here the government investigation targets a large conspiracy and the individuals whose communications will be intercepted are members of that conspiracy, the necessity requirement relates to the demonstrated or probable inadequacy or danger of other investigative techniques to achieve the specific goals pursued by the investigation at hand.") (citation omitted). Consequently, necessity for the wiretap was not diminished by law enforcement's acquisition of some potentially incriminating evidence via an undercover controlled purchase of narcotics from Defendant. SA Pacini's Affidavit thoroughly explained why the wiretap was necessary to achieve the investigation's broader goals identified above.[2]

---

2       According to Defendant, the Government's contention that the wiretap of Defendant's telephones was

Next, contrary to Defendant's position that law enforcement should have placed a tracker on his vehicle or followed him back to his residence instead of tapping his phones, (*see* Docket No. 1684 at 26), the Government simply is not required to exhaust all potential investigative methods before obtaining a wiretap. *See Williams*, 124 F.3d at 418.  To repeat, "[t]he government need only lay a 'factual predicate' sufficient to inform the [authorizing] judge why other methods of investigation are not sufficient." *McGlory*, 968 F.2d at 345 (citation omitted).  The Government satisfied that requirement here.  The Affidavit contains detailed and comprehensive description of the challenges and limitations of other traditional investigative techniques that were used or considered during the investigation including: confidential sources; controlled purchases; physical surveillance; undercover agents; search warrants; interviews/grand jury subpoenas/immunity; trash searches; surveillance cameras; GPS/E911 location data; vehicle tracking devices; pen registers, trap and trace devices, toll analysis, and subscriber information; mail cover requests; financial investigation; other efforts including tracking the subjects' social media accounts; and other wiretaps.  (*See* Docket No. 1684-2, ¶¶ 154-207).  The Affidavit explains that traditional investigative techniques had provided some intelligence concerning the Hazelwood Mob, but those techniques had been unsuccessful in discovering the full scope of the organization and how it operated and the identities of all of the individuals involved.  (*See id.*).

In this Court's estimation, SA Pacini's Affidavit contained a full and complete statement and explanation as to whether normal investigative procedures had been tried and had failed or why they reasonably appeared to be unlikely to succeed if tried or to be too dangerous, it more

---

necessary in order to find out about other associates of the organization is undermined because the Affidavit is "very short on details" regarding his connection to the larger organization.  (Docket No. 1684 at 25).  Defendant cites no authority in support of his suggestion that a particular number of connections to the larger organization must be alleged in a wiretap affidavit.  Regardless, SA Pacini's Affidavit discusses Defendant's interactions with Youngblood, Wood, and two of Youngblood's customers. (Docket No. 1684-2, ¶¶ 93-102, 104-109, 140-41).   It also lists various subjects of the investigation who were expected to be intercepted on Defendant's phones. (*Id.*, ¶¶ 22.d, 22.e).

than established the necessity for the wiretap, and it otherwise complied with the requirements of 18 U.S.C. § 2518. *See Bailey*, 840 F.3d at 115 ("Far from being inadequate to justify authorization of a wiretap, the government's application here is a textbook model of care and thoroughness…."). Accordingly, the Court concludes that Defendant's necessity argument is without merit, and suppression is not warranted on that basis.

### B. Information Provided by the Confidential Sources Did Not Taint the Affidavit.

A judge may authorize a wiretap if, *inter alia*, "there is probable cause for belief that an individual is committing, has committed, or is about to commit a particular offense enumerated in section 2516 of this chapter" and "there is probable cause for belief that particular communications concerning that offense will be obtained through such interception." 18 U.S.C. §§ 2518(3)(a), 2518(3)(b). The Fourth Amendment principles regarding probable cause to conduct property searches are applicable to an authorization for a wiretap. *United States v. Tehfe*, 722 F.2d 1114, 1118 (3d Cir. 1983). Under such principles, probable cause is determined by the totality of the circumstances and requires only that the Government demonstrate a probability of criminal activity. *Gates*, 462 U.S. at 235. "For wiretap surveillance, the focus is on whether there is a fair probability that a communication related to criminal activity will be intercepted over a particular telephone or at or inside a particular location." *United States v. Landfried*, No. 2:19-CR-8-NR, 2020 WL 7047042, at *3 (W.D. Pa. Dec. 1, 2020) (citing *United States v. Urban*, 404 F.3d 754, 773 (3d Cir. 2005)). The district court will uphold an issuing judge's finding of probable cause if the affidavit upon which it was based provided a substantial basis for finding probable cause. *United States v. Hodge*, 246 F.3d 301, 305 (3d Cir. 2001).

In laying out facts to establish probable cause to intercept Defendant's telephones, the Affidavit summarized communications intercepted over other target telephones that suggested

Defendant was supplying narcotics, including heroin/fentanyl and crack cocaine, to other conspirators, it detailed an undercover controlled purchase of suspected heroin/fentanyl from Defendant, and it also outlined information from three confidential sources – CS1, CS5, and CS6. Defendant contends that the Affidavit's probable cause was tainted because information from the confidential sources was not reliable and was stale. (Docket No. 1684 at 23-24).  Those arguments do not upset the finding that there was probable cause for issuance of the wiretap.

First, Defendant generally contends that the confidential sources were motivated to lie because they were trying to avoid criminal charges and because the Government paid them to provide information, thus calling into question the reliability of the information they provided. (Docket No. 1684 at 23).  While probable cause could be undermined where there is a "complete omission of known, highly relevant, and damaging information about [the informant's] credibility—his criminal record, especially while serving as an informant; his gang activity; his prior use of aliases to deceive police; and his expectation of payment[,]" *United States v. Glover*, 755 F.3d 811, 814, 817 (7th Cir. 2014), that situation is not present here.  SA Pacini candidly disclosed that CS1, CS5 and/or CS6 were motivated by the potential to avoid criminal charges and/or by the potential to receive monetary payments, but he averred that they were reliable because information they provided was corroborated by independent investigations conducted by multiple law enforcements agencies and by information provided from other confidential sources. (Docket No. 1684-2, ¶¶ 26-27, 29-30, 32-33).  Therefore, Defendant's broad reliability argument premised on the confidential sources' motivation to avoid charges and/or get paid does not negate the probable cause finding in this case. *See, e.g., United States v. Heilman*, 377 F. App'x 157, 178 (3d Cir. 2010) (affirming denial of *Franks* hearing where the defendant alleged that the confidential informant "has a myriad of reasons to provide false information to law enforcement"

10

without providing evidence as to why); *Glover*, 755 F.3d at 818 (noting that if a detailed affidavit has been extensively corroborated, an informant's criminal background and financial motive is not necessarily essential to the probable cause determination).

Next, Defendant claims that information provided by CS1 and CS5 was stale because CS1 had not purchased drugs from Defendant for months, and there is no timeline for when CS5 purchased drugs from him.  (Docket No. 1684 at 23-24).  The Court finds Defendant's staleness argument unpersuasive.

It is true that probable cause can evaporate if the information in an affidavit is outdated. *See United States v. Zimmerman*, 277 F.3d 426, 434 (3d Cir. 2002).  Consequently, the "[a]ge of the information supporting a warrant application is a factor in determining probable cause." *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993).  "If too old, the information is stale, and probable cause may no longer exist."  *Id.*  However, age alone does not determine whether information is stale.  *Id.*  "The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched." *Tehfe*, 722 F.2d at 1119.  Importantly, "[t]he passage of time 'loses significance' when the evidence sought relates to protracted or ongoing criminality." *United States v. Henley*, 941 F.3d 646, 653 (3d Cir. 2019) (quoting *Urban*, 404 F.3d at 774).  Moreover, "[t]he liberal examination given staleness in a protracted criminal conduct case is even more defensible in wiretap cases than in ordinary warrant cases, since no tangible objects which can be quickly carried off are sought." *Tehfe*, 722 F.2d at 1119-20 (citation omitted).

Here, staleness is not a concern relative to information provided by CS1 and CS5 in this wiretap case because Defendant and many others in the organization allegedly were engaged in ongoing and continuous drug trafficking activity.  *See Henley*, 941 F.3d at 653; *United States v.*

*Cintron*, 243 F. App'x 676, 679 (3d Cir. 2007) ("[A]n activity such as drug trafficking is of a continuous and protracted nature and consequently the passage of time diminishes the significance of staleness in such cases."). Moreover, in addition to information provided by CS1 and CS5 regarding their knowledge and observations of Defendant's drug trafficking activity, the Affidavit also discussed other events to establish probable cause which occurred within days of the initial wiretap order and the wiretap order at issue, such as Defendant's own text messages and calls discussing drug trafficking activity and the undercover controlled purchase of narcotics from him. (Docket No. 1684-2, ¶¶ 93-102, 122-127, 140-141). Overall, information provided by CS1[3] and CS5[4] was not stale and supported probable cause for issuance of the wiretap.

### C. Defendant Has Not Established That He Is Entitled to a *Franks* Hearing.

Defendant next takes issue with the Affidavit's assertion that the FBI "did not conduct trash pulls or set up stationary surveillance because [he] lived in a multi-unit apartment building or they did not know where he lived in McKees Rocks," yet the FBI "later states that they used

---

3    Defendant also complains that the information provided by CS1 is outdated because CS1 indicated Defendant drove a silver Nissan sedan, a white GMC Terrain, and a light brown Ford SUV, yet other portions of the Affidavit stated that Defendant drove a white Nissan. (Docket No. 1684 at 24). To be clear, SA Pacini averred that "investigators have identified multiple vehicles used by [Defendant], to include a white Nissan Maxima, a silver BMW suv, and a tan Ford Explorer." (Docket No. 1684-2, ¶ 190). Therefore, CS1's identification of three vehicles driven by Defendant is consistent with SA Pacini's averment that Defendant used "multiple vehicles," including at least one that was the same – a light brown or tan Ford SUV. In the Court's estimation, CS1's list of vehicles Defendant used does not establish that the information he provided was stale.

4    The Court also rejects Defendant's unreliability argument that CS5 provided certain information constituting unreliable hearsay. (Docket No. 1684 at 24). In support, Defendant highlights CS5's conclusion that he supplied narcotics to Youngblood based on conversations CS5 overheard between unnamed individuals. (*Id.*). Contrary to Defendant's position, any information CS5 provided that was based on hearsay does not establish that all information he provided was unreliable. This is because "an affidavit relying on hearsay is not to be deemed insufficient on that score, so long as a substantial basis for crediting the hearsay is presented." *Gates*, 462 U.S. at 241-42 (internal quotation marks and citation omitted). As detailed in the Affidavit, CS5 also identified Defendant through a DMV photograph, he knew that Defendant sold heroin/fentanyl in the Hazelwood neighborhood, he had purchased narcotics from him in the past, and he observed Defendant driving a white Nissan sedan. (Docket No. 1684-2 at 36, ¶¶ 31.a, 31.b). Additionally, it bears emphasis that some of CS5's information was corroborated by independent investigations conducted by multiple law enforcements agencies and by information from other confidential sources and other investigative techniques. (*Id.*, ¶ 30). Therefore, any hearsay information provided by CS5 did not taint the Affidavit.

geolocation information to gather information about where [he] lived." (Docket No. 1684 at 25). According to Defendant, these statements are contradictory and justify a *Franks* hearing. He is incorrect.

In *Franks v. Delaware*, 438 U.S. 154, 155-56 (1978), the Supreme Court articulated the rule governing situations involving allegedly misleading search warrant affidavits, holding that a defendant has the right to an evidentiary hearing to challenge the truthfulness of statements made in an affidavit establishing probable cause if certain requirements are met. To obtain a hearing, *Franks* requires a defendant to make a substantial preliminary showing that the affidavit contained a false statement, which was made knowingly and intentionally or with reckless disregard for the truth, and which is necessary to the finding of probable cause. *Id.* at 155–56, 171. In order to make this showing, the defendant cannot rest on conclusory allegations or a "mere desire to cross-examine." *Id.* at 171. Rather, he must specifically identify the alleged false statements or omissions in the affidavit[5] and present an offer of proof contradicting the affidavit, including materials such as affidavits or sworn or otherwise reliable statements of witnesses, or provide a satisfactory explanation of their absence. *Id.*; *see also United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (citing *United States v. Yusuf*, 461 F.3d 374, 383 n. 8 (3d Cir. 2006)).

"[The] preliminary showing [that a defendant must make] is no light burden and puts the defendant to task by requiring some offer of proof that materially false statements were recklessly

---

[5]    Statements or assertions contained in an affidavit of probable cause are "made with reckless disregard when 'viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported.' " *Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) (quoting *United States v. Clapp*, 46 F.3d 795, 801 n. 6 (8th Cir. 1995)). Omissions from an affidavit are made with reckless disregard for the truth if an affiant withholds facts that any reasonable person would know that a judge would want to know. *Id.* at 788. A district court "may properly infer that an affiant acted with reckless disregard for the truth where his affidavit contains an averment that was without sufficient basis at the time he drafted it." *United States v. Brown*, 631 F.3d 638, 649 (3d Cir. 2011). However, when attempting to demonstrate that the affiant included a false statement in a warrant affidavit or omitted material from it, it is insufficient to prove that he acted with negligence or made an innocent mistake. *Franks*, 438 U.S. at 171; *Yusuf*, 461 F.3d at 383.

or intentionally made." *United States v. Romeu*, 433 F. Supp. 3d 631, 645 (M.D. Pa. 2020) (quoting *United States v. Darby*, No. 1:14-CR-00123, 2015 WL 13344905, at *3 (M.D. Pa. Aug. 19, 2015)).  To reiterate, "[t]o make the initial showing, a defendant must allege with specificity what was false in the affidavit, must provide proof, must allege that the affiant had a culpable state of mind, and must allege that the remaining information from the affidavit is insufficient to support a finding of probable cause." *United States v. Yokshan*, 431 F. App'x 170, 173 (3d Cir. 2011) (citing *Franks*, 438 U.S. at 171-72).

If the requirements of the substantial preliminary showing "are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-72.  However, if the remaining content is insufficient, the defendant is entitled to a hearing.[6] *Id.* at 172.

In light of these legal standards, Defendant is not entitled to a *Franks* hearing because he has not made the threshold substantial preliminary showing for two reasons. *See Franks*, 438 U.S. at 171.  First, he did not make an offer of proof establishing that SA Pacini misstated or omitted information from the Affidavit knowingly and intentionally or with reckless disregard for the truth. *See id.*; *Desu*, 23 F.4th at 234; *Yusuf*, 461 F.3d at 383, n. 8; *United States v. Rodriguez-Colon*, 827 F. App'x 188, 190 (3d Cir. 2020) (affirming denial of motion to suppress evidence claiming that affidavit in support of search warrant contained material omissions where the defendant's challenge did not contain an offer of proof); *United States v. Rivera*, 524 F. App'x 821, 826 (3d

---

6       If a *Franks* hearing is held, and the defendant proves by a preponderance of the evidence that the false statements or omissions were made knowingly and intentionally or with a reckless disregard for the truth, and with the affidavit's false material set aside, the remaining content is insufficient to establish probable cause, then the warrant must be voided, and the fruits of the search must be excluded from the trial. *Franks*, 438 U.S. at 156; *see also United States v. Frost*, 999 F.2d 737, 743 (3d Cir. 1993).

Cir. 2013) ("Even if the information provided by the informants was unreliable, [defendant] has offered no evidence that the detective who provided the affidavit either knew that the information was not true or recklessly disregarded its falsity."). Rather, Defendant asserts that the FBI contradicted itself by stating that they did not conduct trash pulls or establish surveillance because he lived in a multi-unit apartment building or they did not know where he lived, but later stated that they used geolocation information to gather information about where he lived. As the Government noted, these statements are not inconsistent because SA Pacini explained that the FBI used geolocation data to identify residences "utilized by" Defendant and others. (Docket Nos. 1684-2, ¶ 213; 1717 at 22). Second, even if the alleged contradictory information is excised, the Affidavit still contains ample content to support a finding of probable cause as discussed herein. *See United States v. McKnight*, 568 F. App'x 178, 182 (3d Cir. 2014) ("In a *Franks* proceeding, the court assesses materiality by removing allegedly false statements, inserting omissions, and determining whether probable cause nonetheless remains.") (citing *Yusuf*, 461 F.3d at 383-84). Accordingly, Defendant is not entitled to a *Franks* hearing regarding the validity of the wiretap order.

## III.    CONCLUSION

For the reasons discussed herein, Defendant's Motion to Suppress – Title III Wiretaps and Motion for *Franks* Hearing, (Docket No. 1684), is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:  April 8, 2026

cc/ecf:  All counsel of record